**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TAMARA BAILEY,

                            CASE NO. 4:17-cv-11929

        *Plaintiff*,        DISTRICT JUDGE LINDA V. PARKER

*v.*                       MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 19, 20)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 19), be **DENIED**, that the Commissioner's Motion, (Doc. 20), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Tamara Bailey's claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income benefits ("SSI"). (Doc. 6). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 19, 20).

Plaintiff previously filed claims for DIB and SSI on October 28, 2013, alleging disability beginning July 24, 2013. (Tr. 71). On June 26, 2015, ALJ Kevin Fallis issued a written opinion finding her not disabled. (Tr. 68-86).

On March 9, 2016, Plaintiff filed the instant applications for DIB and SSI, alleging a disability onset date of July 24, 2013. (Tr. 211-23). The Commissioner denied her claim. (Tr. 91-120). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on January 12, 2017 before ALJ Regina Sobrino. (Tr. 35-67). The ALJ issued a decision on February 27, 2017, finding Plaintiff not disabled. (Tr. 15-34). On April 18, 2017, the Appeals Council denied review, (Tr. 1-4), and Plaintiff filed for judicial review of that final decision on June 19, 2017. (Doc. 1).

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that

3

is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 18-29). At Step One, the ALJ found that Plaintiff would meet the insured status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since June 27, 2015. (Tr. 20). At Step Two, the ALJ concluded that the following impairments qualified as severe: degenerative joint disease, fibromyalgia, carpal tunnel syndrome, obesity, anxiety and depression. (Tr. 20-21). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-22). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except:

> The claimant can stand and walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. The claimant is limited to occasional pushing or pulling, and operating foot controls, but is unable to perform any climbing using ladders, ropes, or scaffolds, and no more than occasional climbing of ramps or stairs. The claimant is limited to occasional balancing and stooping, but no kneeling, crouching, or crawling and no more than frequent handling of objects and fingering. The claimant should not perform

any overhead reaching and should avoid concentrated exposure to extreme cold, and all exposure to vibration. She should avoid exposure to hazardous moving machinery and to unprotected heights. In addition, the claimant is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine work.

(Tr. 23). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (Tr. 28). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 28-29).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Administrative Hearing

##### i.    Plaintiff's Testimony at the Administrative Hearings

Plaintiff opened her testimony by furnishing several background details about the state of her life: she lived with her mother at her mother's house, she had completed nearly two years of college in recent years, and she last worked at Kroger three years prior to the hearing. (Tr. 40). Asked to explain why she was let go from that job, she said "[t]he main thing is that I can't stand or walk very . . . long. I also don't drive anymore because of the same reason, that I just stuttered. . . . Anxiety, real bad." (*Id.*). She could stand "at the most" for five or ten minutes before needing to sit down, and she could walk "[l]ess than half a

6

block" at one time. (*Id.*). Arthritis in both hips made sitting for extended periods of time difficult as well. (Tr. 41). "On days when it's real bad," she used a cane. (*Id.*). She could not carry weight in her right hand because "that's the one that's messed up the worst." (*Id.*). After some pressing by the questioner, she clarified that she *could* hold small items such as a pen or pencil, but "it causes a lot of pain afterwards." (Tr. 42). Her primary care doctor—Dr. Arbogast—had "suggested" (though not prescribed) a right-wrist brace, and she had worn one for "six or seven years." (*Id.*). She encountered difficulty in reaching overhead due to "bursitis in my shoulders." (*Id.*). Nor could she bend her knees and crouch, because "[i]t hurts my knees really bad. Then they make all kinds of noises." (*Id.*). She did not clean, shop for groceries, perform yard work, or drive. (Tr. 43). Indeed, since she stopped working, she had not taken trips more than seventy-five miles from her home. (Tr. 44).

To treat her conditions, she took "Prilosec twice a day for my ulcer and acid reflux. I'm on Claritin, Singulair, hydrocodone or Vicodin, whatever you want to call it, Xanax, Lyrica, and Wellbutrin." (*Id.*). To treat her mental-health conditions, she saw Ms. Jean Miller: "I was seeing her in the hopes that I could get the anxiety under control enough to drive again without taking more medication. But I haven't been there in quite a few months because the ride issue." (Tr. 45). Expanding on what brought her to seek such treatment, she noted that "initially, I was self-medicating with alcohol, and that's how I started seeing her. But then we determined that that was part of the anxiety." (*Id.*). She had not, however, returned for treatment since March 2016. (*Id.*).

Asked whether her health had declined in the year and a half preceding the hearing, Plaintiff said "[i]t's more sensitive, and the issue with my shoulders has gotten so that I can't hardly lift my arms up." (Tr. 46).

Plaintiff's counsel then shifted the conversation to Plaintiff's fibromyalgia. (Tr. 49). Plaintiff indicated that the most prevalent trigger points were "[i]n my hands and feet," which felt "like I have sandpaper socks on when I'm wearing closed shoes." (*Id.*). She also struggled with memory, an issue she attributed to her medication "because the Xanax makes me very spacey." (Tr. 50). As a result, she would regularly lose items or forget why she entered rooms. (*Id.*). In cold weather her fibromyalgia would flare up, and to ease her pain she would "take a bath, a hot bath, and I stay in where it's warmer." (*Id.*). On a bad day, she would lay down "probably over half of the day. Because based on my medication, I take a nap usually every day, too." (Tr. 51). Her left shoulder would hurt more than her right. (*Id.*). And due to pain in her hands, she could not write legibly for long. (*Id.*).

Plaintiff then explained certain triggers for her anxiety, including riding in cars and breaking her daily routine. (*Id.*). Aside from visits to church, she did not enjoy being around other people. (*Id.*). And "with my medication, I don't have any ambition anymore. That's why I was trying to get the anxiety more under control without having to take more medicine." (Tr. 52). She could only sleep after taking Xanax, and even then, only for five or six hours, interrupted periodically. (*Id.*). She took at least one nap a day for approximately forty-five minutes. (Tr. 53). Although she liked to read, her memory problems interfered with her ability to follow the plot. (*Id.*).

8

### ii.      The VE's Testimony at the Administrative Hearings

The ALJ's first hypothetical posed an individual "able to stand and walk for about six hours and sit for up to six hours in an eight-hour work day with normal breaks. There should be only occasional pushing or pulling and occasional operating of foot controls. No climbing of ladders, ropes or scaffolds. Only occasional climbing of ramps or stairs. Occasional balancing, stooping, kneeling, crouching, and crawling. Frequent handling of objects and fingering. Assume the need to avoid concentrated exposure to extreme cold and avoidance of all exposure to excessive vibration. Avoid exposure to hazardous, moving machinery, and there should be no exposure to unprotected heights. Assume a limitation to simple, routine, repetitive tasks that are done in a work environment free of fast-paced production requirements and that involve only simple work-related decisions and routine workplace changes. . . . [A]re there jobs in the national economy that a person with those limitations and vocational factors could do?" (Tr. 60-61). The VE indicated that such jobs existed, and they included: (1) cashier (with 100,000 national jobs); sales clerk (with 75,000 national jobs); and inspector (with 136,000 national jobs). (Tr. 61).

For the ALJ's second hypothetical, she added the limitation "that the person should not do any overhead reaching, and should not crawl . . . and can do no more than frequent feeling[.]" (*Id.*). Such limitations would not affect the numbers given for the first hypothetical. The VE also confirmed that none of those jobs required driving as a work duty, precluded the wearing of a right-wrist brace, or required kneeling or crouching to perform. (Tr. 62).

In the ALJ's third hypothetical, she added the additional limitation of "alternate from sitting to standing, from standing to sitting, for up to five minutes approximately every 20 minutes, provided the person was not off-task more than ten percent of the work period[.]" (*Id.*). These limitations, the VE indicated, would preclude the work listed previously. Other jobs, however, continued to exist, including: office helper (with 150,000 national jobs); sorter (with 40,000 national jobs); assembler (with 100,000 national jobs). (Tr. 63).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from

the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* in § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or

11

equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

12

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

13

> (v)    Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at \*3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at \*5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at \*7 (E.D. Mich. Dec. 9, 2009). In the Sixth Circuit, a prior decision by the Commissioner can preclude litigation in subsequent cases.

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 1998 WL 283902, at *3 (acquiescing to *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). The applicable regulations explicitly invoke *res judicata*: An ALJ can dismiss a hearing where "res judicata applied in that we have a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. Ultimately, the *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review.").

In *Drummond*, the Sixth Circuit held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 843. The court later reaffirmed this principle in *Haun v. Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine *de novo* the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004). The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. *See generally Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-*9 (Dec. 30, 1999). These include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," whether she

has a severe impairment or combination of impairments, or whether she meets or equals a listing. *Id.*[1]

Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier decision. *See Bailey ex rel. Bailey v. Astrue*, No. 10-262, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). In other words, even though the first ALJ did not make any findings concerning later periods, her decision still applies to those periods absent the requisite proof of changed circumstances. Thus, as applied in this Circuit, SSAR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding.

To overcome this presumption, the Sixth Circuit has consistently anchored the analysis on the comparison between the "circumstances existing at the time of the prior decision and the circumstances existing at the time of review . . . ." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). The court explained in a case predating *Drummond*: "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that her

---

[1] Tension exists in the case law addressing whether *res judicata* applies to pre-hearing determinations. *Compare Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir. 1978) (noting that *res judicata* can apply even where "no oral hearing was held before an ALJ on the prior application"), *with Asbury v. Comm'r of Soc. Sec.*, 83 F. App'x 682, 684 n.1 (6th Cir. 2003) ("We recognize that the applicability of the *Drummond* analysis is not clear with respect to administrative decisions that do not follow 'trial-type' hearings."). This heretofore unresolved issue can generate difficult questions, and courts typically will not address it unless raised and argued by the parties to a case. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *3 n.2 (E.D. Mich. Feb. 19, 2015) (declining to address the doctrine's applicability to an initial determination in light of "the tensions in the case law and the parties' failure to raise the argument").

condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993). The ALJ must scan the medical evidence "with an eye toward finding some change from the previous ALJ decision . . . ." *Blackburn v. Comm'r of Soc. Sec.*, No. 4:1-cv-58, 2012 WL 6764068, at *5 (E.D. Tenn. Nov. 14, 2012), *Report & Recommendation adopted by* 2013 WL 53980, at *1 (Jan. 2, 2013). That is, the evidence must not only be new and material, but also must show deterioration.[2] *Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *Report & Recommendation adopted by* 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955, at *4 (Sept. 28, 2011). In *Drogowski*, for example, the court rejected the plaintiff's argument that a report met this test simply because it was not before the first ALJ. *See* 2011 WL 4502988, at *2, *8-*9. The relevant change in circumstances is not a change in the availability of evidence but a change in the plaintiff's condition.

Res judicata is not a complete bar on reconsidering prior decisions or determinations: the regulations provide two mechanisms for such reexamination that escape the doctrine's effects. *Purter v. Heckler*, 771 F.2d 682, 691-93 (3d Cir. 1985)

---

[2] I note, as well, that an equally important corollary to this principle dictates that an ALJ may not find *improvement* in a claimant's condition absent new and material evidence thereof following an already adjudicated period. *See, e.g.*, *Albanna v. Comm'r of Soc. Sec.*, 2016 WL 7238925, at *15 (E.D. Mich. Nov. 22, 2016) (Morris, M.J.) (finding an ALJ erred by calling the claimant's illiteracy into question based on "thinly substantiated doubts" where a prior decision found him illiterate; *see also Drummond*, 126 F.3d at 842-43; *Hamblin v. Apfel*, 7 F. App'x 449, 451 (6th Cir. 2001).

(discussing reopening as an exception to claim preclusion). The first, less important to *res judicata* case law, occurs just after the initial determination when the claimant's first step in the review process is sometimes a request for "reconsideration" of that decision. 20 C.F.R. §§ 404.907, 416.1407. The more critical and complicated mechanism is reopening a prior ALJ decision.

The regulations pertaining to reopening permit the Commissioner, through an ALJ or Appeals Council, to peel back the determination or decision and revise it. 20 C.F.R. §§ 404.987, 404.992, 416.1487, 416.1492. Either the claimant or the Commissioner can initiate the process. *Id.* A determination or decision may be reopened "for any reason" within twelve months of the notice of the initial determination, but "good cause" must exist if the reopening occurs within two years of the initial determination for SSI claims, or four years for DIB claims. *Id.* §§ 404.988, 416.1488. Good cause exists if, among other reasons, "[n]ew and material evidence is furnished" for either type of claim, SSI or DIB. *Id.* §§ 404.989, 416.1489. If a determination or decision is reopened properly, *res judicata* does not apply. *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002).

The decision whether to reopen, unless it implicates a colorable constitutional issue, evades judicial review: courts can only review the Commissioner's final decisions made after a hearing. *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977). Courts may, however, review a decision *not* to reopen a case in order "to determine whether *res judicata* has been properly applied to bar the pending claim or whether, even though *res judicata* might properly have been applied, the prior claim has nevertheless been reopened." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999); *see also Kaszer*, 40 F. App'x

at 690 ("'[W]e will examine the record to determine whether or not a reopening has occurred.'" (quoting *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987))).

Implicit reopenings occur where the ALJ crafts a decision that appears to "readjudicat[e] part of the period already adjudicated by the first decision" rather than "adjudicate only the subsequent period." *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 358 (6th Cir. 2013). For instance, where the ALJ reviews the entire record, including portions from the already adjudicated period, and decides "the merits of the claim." *Tobak*, 195 F.3d at 186. One factor that could lead to finding an implicit reopening is the ALJ's failure to discuss the prior determination or the *res judicata* doctrine. *See Martin v. Comm'r of Soc. Sec.*, 82 F. App'x 453, 455 (6th Cir. 2003); *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987). Nonetheless, an ALJ's review of old or new evidence does not necessarily signify a constructive reopening, for such a review would be required to decide against reopening as well as for it. *See Girard v. Chater*, 918 F. Supp. 42, 44-45 (D.R.I. 1996). The ALJ's discussion of new evidence likewise might relate to her independent determination of whether to grant benefits in the unadjudicated period, again indicating no reopening occurred. *See id.* at 44.

The ability to reopen—explicitly or implicitly—must meet certain regulatory requirements. 20 C.F.R. §§ 404.987-404.996, 416.1487-416.1494. Chief among these is the two year (SSI) and four year (DIB) time limits for good cause reopenings. *Id.* §§ 404.988, 416.1488. Consequently, an ALJ is powerless to reopen a claim outside these periods. *See Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("Because

19

more than four years had passed since the denial of the original application, the Commissioner could not have constructively reopened Glazer's case.").

### G. Analysis

As an initial matter, I note that the ALJ addressed the *res judicata* doctrine in her opinion and considered only whether new and material evidence showed a deterioration in Plaintiff's condition. *See generally* (Tr. 23). Plaintiff and the Commissioner agree that the ALJ applied the correct standard to this case. (Doc 19 at ID 653-54); (Doc. 20 at ID 664). Rather, the dispute at hand centers around whether the ALJ failed to account "for significant evidence which might have required an even more restrictive RFC." (Doc. 19 at ID 654). More precisely, Plaintiff takes issue with the ALJ's conclusion that Plaintiff's capacity for standing and walking had not significantly changed. *See generally* (*Id.* at ID 654-67). She notes that "when it came time to analyze the limitations [she] required with regard to walking and standing, the ALJ considered only the opinion of [her] treating physician, Dr. Arbogast, that [she] was unable to stand or sit for [']long periods of time,'" and further erroneously found that such a statement was not "specific" enough to support a finding that Plaintiff's capacity for standing or walking "changed significantly since the prior, administratively final decision was issued." (*Id.* at ID 656) (quoting (Tr. 27)) (emphasis omitted). In addition, Plaintiff avers that the ALJ "ignor[ed] the findings and conclusions of Drs. Sandrock and McIntosh," whose reports "demonstrate a significant change in plaintiff's capacity for standing or walking since the earlier decision, in the form of entirely new diagnoses that would impact precisely these activities." (*Id.* at ID 656-67).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

In discounting Dr. Arbogast's opinion, the ALJ noted that it lacked support from "clinical findings, diagnostic test results, the treatment history, or reports from other sources," and that it failed to describe the impact of Plaintiff's conditions with any specificity. (Tr. 27). Further, the ALJ reasoned that the "general limitations the doctor described are not linked to clinical findings or diagnostic testing." (*Id.*). These are not only accurate descriptions of the opinion at issue—*see, e.g.*, (Tr. 302, 312, 319, 359, 494, 547)

(normal gait/ambulation); (Tr. 493, 503, 547, 567, 571) (normal range of motion); (Tr. 367, 392-93, 427) (mild objective findings); (Tr. 319, 359, 511) (not requiring an aid for ambulation)—but also good reasons to discount it. *Compare* (Tr. 559), *with, e.g.*, *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (failing to support a medical source statement with "documentation of testing or other objective medical bases" for its conclusions justifies discounting that statement); *Reese v. Comm'r of Soc. Sec.*, No. 16-CV-13931, 2017 WL 6387855, at *4 (E.D. Mich. Dec. 14, 2017) ("Review of the one-page statement confirm the ALJ's reasons for giving the opinion little or no weight."); *Betty v. Comm'r of Soc. Sec.*, No. 15_CV-10734, 2016 WL 1105008, at *5 (E.D. Mich. Feb. 17, 2016), *R. & R. adopted,* No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016) (affirming the ALJ's rejection of "nonspecific" treatment notes that "lacked the detail necessary to support" the limitations it prescribed). Moreover, the citations Plaintiff employs are sparing and fail to paint a comprehensive picture of any exacerbation of her ability to walk or stand, further sapping the merit from her argument. *Cf., e.g.*, *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, . . ."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness*

*Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))).

Plaintiff's other argument that Dr. Sandrock and Dr. McIntosh issued diagnoses that would impact standing or walking, again, lacks persuasive value. Diagnoses do not *per se* imply any particular functional limitation. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Nor does Plaintiff illustrate the walking or standing limitation she believes the ALJ should have included in her RFC—or, for that matter, point to the evidence on which her bare assertions rely. As such, the Court should find her appeal unavailing. *Accord, e.g.*, *Jones*, 336 F.3d at 474; *McPherson*, 125 F.3d at 995-96; *Flowers v. Comm'r of Soc. Sec.*, No. 14-CV-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck"); *see also Randolph v. Comm'r of Soc. Sec.*, No. CV 15-11945, 2016 WL 7206711, at *6 (E.D. Mich. Aug. 16, 2016) ("It is Randolph's burden to prove the limitations resulting from this impairment at the RFC stage." (citing 20 C.F.R. § 416.912(c))), *R. & R. adopted,* No. 15-11945, 2016 WL 7178742 (E.D. Mich. Dec. 9, 2016); *Al-Saidie v. Comm'r of Soc. Sec.*, No. 16-10471, 2017 WL 3633126, at *6 (E.D. Mich. Feb. 24, 2017) (claimants must "demonstrate a need for a more restrictive RFC"), *R. & R. adopted,* No. 16-10471, 2017 WL 2982275 (E.D. Mich. July 13, 2017).

## H.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 19), be **DENIED**, that the Commissioner's Motion, (Doc. 20), be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 26, 2018                              S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge


## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 26, 2018                               By s/Kristen Castaneda
                                                   Case Manager